105 F.3d 664
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Paul DALLAS, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner, Social Security
Administration, Defendant-Appellee.
 No. 96-15216.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 23, 1996.*
Decided Jan. 3, 1997.
 
 Before: SNEED, SKOPIL, and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 I.
 SUMMARY
 
 2
 The appellant, Paul Dallas, seeks to assert a claim for disability benefits several years after his disability insurance expired. Previously, Dallas had filed a similar claim for benefits in 1982, but his claim was denied. He now alleges that his condition has changed and provides new evidence which he argues supports the contention that he became disabled after his initial application for benefits was denied on May 13, 1982, but before his disability insurance expired on December 31, 1987.[1] However, Dallas cannot demonstrate that he is or was disabled for the purposes of the Social Security Act. Therefore, we affirm the district court's grant of the Commissioner's motion for summary judgment.
 
 II.
 FACTS
 
 3
 Dallas, who now is 54 years old, had worked as a commercial airline pilot for several years before he was injured on the job. On December 12, 1979, he suffered a blast of dust to his eyes from a jet engine. As a result, he suffers from monocular diplopia (double vision) and a color vision anomaly in the blue-yellow spectrum. Because of his visual impairment, Dallas was denied his first class medical certificate, making it impossible for him to continue his work as a commercial pilot.
 
 
 4
 On October 20, 1981, Dallas filed his initial application for disability insurance alleging that he had been disabled by the 1979 accident. His application was denied, and a subsequent hearing was granted. An Administrative Law Judge ("ALJ") affirmed the denial on May 13, 1982, finding that Dallas suffered from double vision in the left eye, but that he was not disabled for the purposes of the Social Security Act. Relying on the testimony of a vocational expert, the ALJ determined that Dallas remained capable of performing numerous other jobs that did not require acute vision. Dallas did not appeal this decision.
 
 
 5
 Dallas reapplied for disability insurance on July 29, 1993. He alleged that his condition had worsened since the 1982 decision, leaving him unable to return to any sort of meaningful work. The Commissioner of Social Security denied Dallas's application and he appealed. A second ALJ (ALJ II) declined to reopen the findings made in 1982, stating that they had become final, and treated them as res judicata for the period leading up to May 1982. However, ALJ II properly considered the alleged change in condition for the period between May 1982 and December 31, 1987, the date on which Dallas's insured status expired. On October 21, 1994, this ALJ upheld the Commissioner's denial of Dallas's disability insurance benefits.
 
 
 6
 Thereafter, Dallas timely filed an appeal in district court. Dallas submitted additional evidence in the district court and moved for summary judgment. The district court denied this motion and granted the Commissioner's counter motion for summary judgment. The district court held that Dallas could not show that his circumstances had changed to an extent that he was now disabled. The district court dismissed Dallas's additional evidence on the basis that Dallas failed to show "good cause" for why it was not introduced during the prior administrative proceedings. Dallas timely appealed the district court's judgment. We affirm.
 
 III.
 STANDARD OF REVIEW
 
 7
 The decision to deny benefits must be affirmed if substantial evidence supports the findings of the Administrative Law Judge ("ALJ") and the ALJ applied the correct legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir.1995).[2] Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such evidence as a reasonable mind might accept as adequate to support a conclusion. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir.1990).
 
 IV.
 ANALYSIS
 
 8
 Dallas has failed to establish a disability for the purposes of the Social Security Act. Substantial evidence supports the ALJ II's determination. Moreover, Dallas's new evidence is immaterial and does not require reconsideration of his claim.
 
 A. Change of Condition
 
 9
 Whether a claimant is disabled for the purposes of determining coverage under the Social Security Act turns on his ability to engage in any substantial gainful activity due to medically established physical and/or mental impairments. 42 U.S.C. 416(i), 423(d). Because the unappealed 1982 decision creates a presumption of continuing non-disability, see Lyle v. Secretary of Health & Human Servs., 700 F.2d 566, 568 (9th Cir.1982), Dallas must present evidence of "changed circumstances" arising subsequent to the first ALJ's decision in 1982 and before his disability insured status expired. See Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir.1985); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1996). Dallas's insurance expired on December 31, 1987.
 
 
 10
 As ALJ II properly noted, the only evidence in the record which originated prior to December 31, 1987 was an examination by Dr. Frank Zisman. Dr. Zisman has been Dallas's sole treating physician since the 1982 decision. Dr. Zisman's report, dated February 19, 1987, concluded that Dallas had double vision in the upper left field of the left eye. This report does not support Dallas's claim that his condition had deteriorated because it fails to indicate any change in his condition. The first ALJ found that Dallas suffered from double vision in his left eye, but nevertheless concluded that he was not disabled under the Act.
 
 
 11
 The remaining medical evidence in the record is a letter of March 3, 1994, sent by Dr. Zisman to the Department of Social Services which relates back to the relevant time period. In it Dr. Zisman described Dallas's impairments as double vision, pathologically altered color vision, and ocular discomfort. He also noted that Dallas experienced headaches as a result of his double vision. As was the case with the 1987 report, this letter does not support Dallas's claim that he became disabled between May 1982 and December 1987. It conveys only that Dallas's problems persisted throughout the relevant time period. It does not, however, suggest that Dallas's condition had become disabling. To the contrary, the letter's conclusions concerning Dallas's capacity to work are consistent with ALJ II's determination that Dallas was not disabled. Dr. Zisman suggests that Dallas's condition rendered him unsuitable for his former position as an airline pilot, any commercial transportation position, and any other position requiring adequate color perception. The ALJ properly considered that Dr. Zisman placed no other restrictions on Dallas's ability to work.[3]
 
 
 12
 Essentially, the only change in Dallas's condition during the relevant time period was the onset of headaches in 1984. However, Dallas's own testimony indicates that they did not become severe until 1988 and that he could "knock them out" in fifteen minutes with a combination of rest and aspirin.
 
 
 13
 Although Dallas has shown that he was unable to do the skilled type of work which he prefers to perform, he has failed to establish that his condition had deteriorated to the extent which he could not engage in any substantial gainful activity. The protection afforded by the Act is quite limited. It does not protect against a failure by reason of a disability to be able to perform one's chosen form of employment. ALJ II was, therefore, correct in concluding that Dallas was not disabled under the Act.
 
 B. New Evidence
 
 14
 Nonetheless, Dallas insists that this court should remand Dallas's claim for reconsideration in light of his new evidence. New evidence is material "only where there is a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination had it been before [her]." Booz v. Secretary of Health & Human Servs., 734 F.2d 1378, 1380 (9th Cir.1984) (internal quotation and emphasis omitted). Here there is no "reasonable possibility" the new evidence would alter the ALJ's decision. We, therefore, decline to remand Dallas's claim.
 
 
 15
 The district court never considered the materiality of the evidence. Rather, it held that Dallas failed to show "good cause" for why he did not introduce it during the administrative process. It is unnecessary for us to answer whether he has successfully met the "good cause" requirement because Dallas's new evidence does not further his cause. The reason is that it does not support a "reasonable possibility" that Dallas became disabled between May 1982 and December 1987. The most significant pieces of new evidence were a November 26, 1985 report and an August 24, 1995 letter, both authored by Dr. Zisman. The 1985 report includes the statement, "[t]his year the increase in error scores in each eye should be of concern." Dallas argued that this statement indicates that his vision deteriorated during the relevant time period. This may be so. However, the scores referred to in the report reflect only an increased defect in Dallas's color vision. This information fails to advance Dallas's claim. The ALJ II determined that Dallas was not "disabled" in spite of a finding that his visual impairments ruled out work requiring color perception.
 
 
 16
 The 1995 letter is also immaterial. Although the letter concludes that Dallas could not have engaged in substantial gainful activity, that conclusion is inconsistent with Dr. Zisman's previous reports and correspondence, especially those originating between May 1982 and December 1987. Thus, the significance assigned to the statements made in the letter must be discounted. See Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir.1989). This letter is all the less persuasive since it was produced after the ALJ II issued an adverse determination. See id.
 
 V.
 CONCLUSION
 
 17
 We affirm the denial of disability insurance benefits on the basis that substantial evidence supports the second ALJ's determination that Dallas was not disabled under the Act. We also decline to remand Dallas's claim because there is not a "reasonable possibility" that the new evidence could alter the prior determination in this case.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because Dallas is a pro se litigant, his pleadings are to be liberally construed. See Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir.1985) (en banc)
 
 
 [2]
 We review de novo the district court's grant of summary judgment to the Commissioner. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989)
 
 
 [3]
 Dallas urges that we now consider an October 27, 1994 letter sent by Dr. Zisman to the appeals council. In this letter, Dr. Zisman attempts to correct ALJ II's "misinterpretation" of his earlier letter, opining that Dallas's condition "cause[s] him not to be able to perform substantial gainful employment." However, the inconsistency of the statements made in this letter to those made previously by Dr. Zisman, and the lack of corroborative clinical findings in the record require that we disregard it. See Morgan v. Sullivan, 945 F.2d 1079, 1081 (9th Cir.1991)